IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONNELL PRICE, :
    Petitioner :
: No. 1:17-cv-01103
v. :
: (Judge Kane)
MARK GARMAN, et al., :
    Respondents :

## MEMORANDUM

On June 22, 2017, the Court received and filed a petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2254, signed by Petitioner Donnell Price ("Price"), who is currently incarcerated at the State Correctional Institution at Rockview, Bellefonte, Pennsylvania ("SCI-Rockview"). (Doc. No. 1.) For the reasons that follow, the Court will dismiss Price's habeas petition.

## I. BACKGROUND

### A. Procedural History

Price is serving a term of life imprisonment imposed after he was convicted of murder, child endangerment, and possession of instruments of crime. (Doc. No. 1); see also Commonwealth v. Price, Docket No. CP-22-CR-749-2012 (Dauphin Cty. C.C.P. Mar. 8, 2013); Commonwealth v. Price, 1330 MDA 2013, 2014 WL 10919337 (Pa. Super. Ct. June 3, 2014).[1] The Pennsylvania Superior Court set forth the background of the case as follows:

> Price was married to Tarina Price ("Ms. Price") with whom he shared two children. Price and Ms. Price encountered marital

---

[1] In a habeas proceeding, federal courts may take judicial notice of state court records. Minney v. Winstead, Civ. No. 12-1732, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); see also Reynolds v. Ellingsworth, 843 F.2d 712, 714 n.1 (3d Cir. 1988). Accordingly, in reviewing Price's petition, the Court takes judicial notice of the publicly-available dockets of Price's criminal and collateral post-conviction proceedings in the Court of Common Pleas of Dauphin County, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court.

1

> problems in 2011, resulting in the pair living in separate areas of their home, located [on] . . . Sycamore Street in Harrisburg. Eventually, Price moved out of the Sycamore Street home and moved in with a friend [on] . . . Logan Street.
>
> In the months leading up to December 2011, Price increasingly became frustrated and angry with his marital issues and believed that Ms. Price was cheating on him. Price began speaking to others about his anger towards Ms. Price, including her coworkers. On numerous occasions, Price expressed his anger and made references to killing Ms. Price if he saw her with another man.
>
> . . .
>
> On December 15, 2011, at approximately 12:35 A.M., Darlene Bradley ("Bradley"), a neighbor of Ms. Price, awoke to her dog growling. Bradley heard a low voice saying "help me, help me, help me." Bradley looked out from her second floor bedroom window and saw two people. Bradley witnessed one person, who was later identified as Ms. Price, struggling and trying to get up and watched her crawl to the middle of the street. She then witnessed the second person, a male, dressed in a dark sweatsuit, stand over Ms. Price and pull out a gun. As Ms. Price put her hands in front of her face, the man shot her in the head. He then turned and left the scene.

Price, 2014 WL 10919337, at *1-2.

After arriving at the scene and clearing Ms. Price's residence, the Harrisburg police contacted Price, requesting to speak with him at Ms. Price's house. Id. at *2. When Price arrived, he was handcuffed and informed that he was not under arrest, but that he was going to be detained for the purpose of an investigation. Id. He was taken to the police station where he admitted to killing Ms. Price. Id. at *3. On November 21, 2012, Price filed an omnibus pre-trial motion seeking to suppress all statements made and items seized, which was denied on February 28, 2013. Id. Following a jury trial from March 4 to March 7, 2013, Price was found guilty on all charges. Id.

Price filed a post-sentence motion on March 18, 2013, which the trial court denied on July 24, 2013. Id. Price appealed the denial of his post-sentence motion to the Pennsylvania Superior Court, raising three issues: 1) whether the suppression court erred in failing to suppress all evidence discovered following his arrest; 2) whether the suppression court erred in failing to suppress statements made where he invoked his right to counsel; and 3) whether the Commonwealth failed to present sufficient evidence to sustain his conviction for first-degree murder. Id. at *4. The Superior Court affirmed Price's judgment of sentence on June 3, 2014. Id. On April 27, 2015, the Pennsylvania Supreme Court denied allocatur. Commonwealth v. Price, 629 Pa. 635 (Pa. 2014). Price then filed a Post Conviction Relief Act ("PCRA") petition,[2] raising an ineffective assistance of counsel claim that was dismissed by the PCRA Court on June 21, 2016 as a result of Price's failure to respond. (Doc. No. 1 at 9-11); Commonwealth v. Price, Docket No. CP-22-CR-749-2012 (Dauphin Cty. C.C.P. June 21, 2016). The Superior Court dismissed Price's PCRA appeal on December 15, 2016 due to Price's failure to file a supporting brief. (Doc. No. 1 at 44); Commonwealth v. Price, Docket No. 1124 MDA 2016 (Pa. Super. Dec. 15, 2016). Price subsequently filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 22, 2017. (Doc. No. 1.)

**B.     Price's Habeas Claims**

Price raises the following four grounds in the instant habeas petition:

1. Whether the state court erred in failing to suppress all evidence discovered following Price's arrest where he was arrested without probable cause or a warrant in violation of the Fourth Amendment;

---

[2] See 42 Pa. Cons. Stat. Ann § 9541, et seq. The PCRA "permits motions for post-conviction collateral relief for allegations of error, including ineffective assistance of counsel, unlawfully induced guilty pleas, improper obstruction of rights to appeal by Commonwealth officials, and violation of constitutional provisions." Hankins v. Fulcomer, 941 F.3d 246, 251 (3d Cir. 1991).

2. Whether Price was denied his right to counsel in violation of the Fifth Amendment;
3. Whether the Commonwealth failed to present sufficient evidence to sustain Price's conviction of first degree murder; and
4. Whether Price received ineffective assistance of counsel.

(Id.)

## II. LEGAL STANDARD

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." Dunn v. Colleran, 247 F.3d 450, 468 (3d Cir. 2001) (quoting Calderon v. Coleman, 525 U.S. 414, 146 (1998)). The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism. Engle v. Isaac, 456 U.S. 107, 128 (1982). "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." Id. States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. Brecht v. Abrahamson, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).

## III. DISCUSSION

As an initial matter, the Court must determine whether Price's grounds for relief presented in his habeas petition are cognizable in a federal habeas proceeding; whether the claims have been exhausted in state courts; and, if not, whether the circumstances of Price's case excuse his default.

### A. Exhaustion, Procedural Default, and Non-Cognizable Claims

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus, unless the petitioner has first satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b). Under § 2254(c), a petitioner will not be deemed to have exhausted his available state remedies if he had the right under the law of the state to raise, by any available procedure, the question presented. O'Sullivan v. Boerckel, 526 U.S. 838 (1999). A federal claim may be exhausted either by being raised on direct appeal or presented in post-conviction PCRA proceedings. Id. at 845. In addition, a claim is exhausted when it has been "fairly presented" to the state court. Picard v. Connor, 404 U.S. 270, 275 (1971). To that end, the federal habeas claim "must be the substantial equivalent of that presented to the state courts." Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). The petition must do so "in a manner that puts [the respondents] on notice that a federal claim is being asserted." Bronshtein v. Horn, 404 F.3d 700, 725 (3d Cir. 2005). "The Supreme Court has instructed that a claim is not 'fairly presented' if the state court 'must read beyond a petition or brief . . . in order to find material' that indicates the presence of a federal claim." Collins v. Sec'y of Pa. Dep't of Corr., 742 F.3d 528, 542 (3d Cir. 2014) (quoting Baldwin v. Reese, 541 U.S. 27, 32 (2004)). Moreover, a habeas corpus petitioner has the burden of proving the exhaustion of all available state remedies. 28

U.S.C. § 2254. Overall, the exhaustion requirement advances the goals of comity and federalism while reducing "piecemeal litigation." Duncan v. Walker, 533 U.S. 167, 180 (2001).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is an absence of available State corrective process." McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999). Claims deemed exhausted because of a state procedural bar are considered to be procedurally defaulted. See, e.g., Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000). The district court then analyzes the claims under the procedural default doctrine. Id. The purpose of this rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their claims in state court. Coleman v. Thompson, 501 U.S. 722, 732 (1991). In Cone v. Bell, 556 U.S. 449 (2009), the United States Supreme Court explained:

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment. In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the State's interest in correcting their own mistakes is respected in all federal habeas cases. When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

Id. at 465 (internal quotations and citations omitted).

However, habeas corpus review is not barred in every instance in which a state court invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner.

6

A state procedural rule can preclude federal habeas corpus review "only when the state rule is 'independent of the federal question [presented] and adequate to support the judgment.'" Leyva v. Williams, 504 F.3d 357, 365 (3d Cir. 2007) (citing Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007)). The requirements of independence and adequacy are distinct. Levya, 504 F.3d at 365. A rule is "independent" if it is not dependent on any federal constitutional question, but "[a] state procedural ground will not bar federal habeas relief if the state law ground is 'so interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's federal claims." Johnson v. Pinchak, 392 F.3d 551, 557 (3d Cir. 2004). A rule is "adequate" if "it was firmly established, readily ascertainable, and regularly followed at the time of the purported default.'" Levya, 504 F.3d at 366 (quoting Szuchon v. Lehman, 273 F.3d 299, 372 (3d Cir. 2001)).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if the petitioner can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. In order to show "cause and prejudice" sufficient to overcome a state court default, a petitioner must demonstrate the "cause" for his default and "prejudice" attributable thereto. Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000) (citing Harris v. Reed, 489 U.S. 255 (1989)). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Under the "prejudice prong," a petitioner has the burden of showing "not merely that the errors at his trial created a possibility of prejudice, but that they

7

worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982); see also Holland v. Horn, 519 F.3d 107, 112 (3d Cir. 2008).

To show a "fundamental miscarriage of justice," a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 326 (1995). Demonstrating actual innocence requires a stronger showing than that needed to establish prejudice. Id. In Goldblum v. Klem, 510 F.3d 204 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit explained the applicable two-step inquiry as follows. First, a "court must decide 'whether the petitioner has presented new reliable evidence . . . not presented at trial,'" and second, if a petitioner "puts forth new evidence not considered by the jury, a court asks 'whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" Goldblum, 510 F.3d at 225 (citing Hummard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004)). If a petitioner can meet this standard by establishing "cause and prejudice" or a "fundamental miscarriage of justice," his default will be excused and the Court may review the merits of the claim presented. Id.

### i. Ground One: Whether the State Court Erred in Failing to Suppress all Evidence Discovered Following Price's Arrest Where he was Arrested Without Probable Cause or a Warrant in Violation of the Fourth Amendment

Price maintains that the state court erred in failing to suppress evidence that was obtained without a warrant and without probable cause. (Doc. No. 1. at 5.) Respondent contends that this claim was adjudicated on the merits and that the state court's decision was not contrary to, or did not involve an unreasonable application of, clearly established Federal law and that the state court's determination of this claim was based on a reasonable determination of the facts in light of the evidence. (Doc. No. 10 at 21.) The Court notes, however, that as a general rule, Fourth

8

Amendment exclusionary-rule claims are cognizable on federal habeas corpus review only if there has been no opportunity for full and fair litigation of the claim in the state courts. See Reed v. Farley, 512 U.S. 339 (1994); Withrow v. Williams, 507 U.S. 680 (1993); Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42 (3d Cir. 1984); McCullough v. Coleman, No. 1:08-cv-1624, 2000 WL 530354, at *1 (M.D. Pa. Mar. 2, 2009); Fann v. Mooney, No. 4:cv-14-456, 2016 WL 1624013, at *5 (M.D. Pa. Apr. 25, 2016).

Here, it is clear that Price was previously afforded a full and fair hearing on his Fourth Amendment claim, having raised this issue with the Dauphin County Court of Common Pleas, subsequently appealing this issue to the Superior Court, which affirmed the trial court, and having his request to appeal to the Supreme Court of Pennsylvania denied. (Doc. No. 1); Price, 2014 WL 10919337, at *4. Consequently, because Price has received a full and fair hearing in which to present this Fourth Amendment claim, his instant attempt to relitigate this issue is meritless. See Stone v. Powell, 428 U.S. 465, 481 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial."); see also Gilmore v. Marks, 799 F.2d 51, 56 (3d Cir. 1986) ("[A] federal court may not reexamine the state court's determination that no Fourth Amendment violation occurred."); McCullough, 2000 WL 530354, at *1. Accordingly, this claim will be dismissed.

### ii. Ground Four: Ineffective Assistance of Counsel

Respondent contends that Price has failed to exhaust ground four – whether he received ineffective assistance of counsel – and that he has also procedurally defaulted this ground. (Doc. No. 10 at 28, 29.) In reviewing the record, the Court notes that while Price filed a PCRA in

9

which he raised this ground, the PCRA Court dismissed the petition due to Price's failure to respond to its notice of intent to dismiss his PCRA petition (Doc. No. 1 at 43), and the Superior Court denied his subsequent appeal without issuing an opinion as a result of Price's failure to file a brief (Id. at 44); see also Pa. R. App. P. 2101 ("Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.").

Rule 2101 is an independent and adequate state rule. See Betha v. Lane, Civ. No. 17-3078, 2018 WL 3119868, at *3 (E.D. Pa. Apr. 4, 2018). Consequently, Price has not exhausted ground four, as required by 28 U.S.C. § 2254(b)(1)(A), and it now appears that this ground has been procedurally defaulted because any second PCRA petition filed by Price would be untimely. See 42 Pa.C.S.A. § 9545(b) (providing that such a petition must be filed within one year of the date on which the judgment becomes final). Consequently, the Court cannot consider this ground unless Price has demonstrated either cause and actual prejudice, or a fundamental miscarriage of justice, so as to excuse the procedural default. See Danner v. Cameron, 955 F. Supp. 2d 410, 423 (M.D. Pa. 2013.)

Price advances no compelling argument to establish that cause for the default exists, or that a fundamental miscarriage of justice will occur if this Court does not consider this claim. See Coleman, 501 U.S at 750. Rather, Price argues that prison officials hindered his ability to file a brief in support of his PCRA appeal by confiscating his legal materials. (Doc. No. 1 at 10.) The Court finds, however, that in addition to the absence of support for this assertion, Price does not contend that prison officials prohibited him in any way from filing a brief with the Superior

Court. Moreover, Price provides no explanation as to why he did not file, at the very least, a request to the Superior Court for an extension of time to file a supporting brief. See Betha, 2018 WL 3119868, at *3 n.3. Because this claim has been procedurally defaulted, the Court is precluded from addressing the merits. See Larue v. Harry, No. 3:16-cv-485, 2016 WL 2625024, at *2 (M.D. Pa. May 9, 2016).

### B. Merits Analysis

The remaining grounds raised in Price's petition have been adjudicated on their merits in state court, and accordingly, have been exhausted. Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not overturn a state court's resolution of any claim that was adjudicated on the merits in a state court unless that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)-(2).

#### i. Ground Two: Whether Price was Denied the Right to Counsel in Violation of the Fifth Amendment

The Fifth Amendment of the United States Constitution provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The prosecution may not use statements stemming from a custodial interrogation unless procedural safeguards are used to protect the privilege against self-incrimination. See Miranda v. Arizona, 384 U.S. 436, 444 (1966). Prior to any questioning, therefore, the individual must be informed that he has a right to remain silent; that any statement he does make may be used as evidence against him; and that he has a right to the presence of an attorney, either retained or appointed. Id. A party may waive these rights, provided that the waiver is made voluntarily,

11

knowingly, and intelligently.  Id.  Absent a voluntary waiver of these rights, a confession taken during a custodial interrogation from which the aforementioned safeguards are absent violates the privilege against self-incrimination.  See Thompson v. Keohane, 516 U.S. 99 (1995).

Price alleges that the state court erred in failing to suppress his statements made to police during an interrogation and that he was denied his constitutional right to counsel after he requested counsel.  (Doc. No. 1 at 6); Price, 2014 WL 10919337, at *6.  Addressing this claim on appeal, the Superior Court provided the following:

> Officer Pierce and Detective O'Connor each apprised Price of his Miranda rights.  Officer Pierce administered Miranda rights when he transported Price to the police station in his vehicle.  Detective O'Connor then gave Price his Miranda rights prior to interviewing him at the police station.  After confessing to murdering Ms. Price, Price agreed to provide an audio recorded statement of his confession.  Price began to provide the recorded statement, but then signaled for the recording to stop. Detective O'Connor obliged.  Price then asked, "Should I get an attorney?"  Detective O'Connor replied, "That's your decision, not mine.  If you want one, there's no problem."  The audio recording proceeded wherein the following dialogue occurred:
>
> Q: This is Detective O'Connor uh the statement . . . the recorder's back on.  Um Mr. Price uh you had me turn off the recorder correct?
> A: Yes.
> Q: You wanted to talk to me?
> A: Yes
> Q: About whether you should get an attorney or not?
> A: Yes.
> Q: And you've decided to continue to talk to us without an attorney present?
> A: Yes.
> Q: Okay.  And that was your decision not mine?
> A: Yes it is.
> Q: Okay.  Alright and you made that on your own volition? Okay? Yes?
> A: Yes.
>
> . . .

> After review of the record, we hold that Price failed to invoke unequivocally the right to counsel, and thus, the suppression court did not err in failing to suppress Price's statements. The only reference Price made to obtaining an attorney amounted to a mere inquiry into whether he should get an attorney. After asking Detective O'Connor this question, he decided to proceed without an attorney. Price confirmed on the audio recording that it was his decision to resume the audio recording and that the decision was made on his own volition.

Price, 2014 WL 10919337, at *7.

Based upon the foregoing, the Court finds ample evidence supporting the state court's determination that Price failed to invoke his right to counsel unequivocally. The Court concludes that Price has not asserted any argument that the state court's disposition of this issue was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Moreover, Price has not shown that the state court's determination of the facts was unreasonable. Accordingly, ground two of Price's habeas petition will be dismissed.

### ii. Ground Three: Whether the Commonwealth Failed to Present Sufficient Evidence to Sustain Price's Conviction of First Degree Murder

As to his third ground for relief, Price contends that the evidence was insufficient to sustain the guilty verdict with respect to his first-degree murder conviction. (Doc. No. 1 at 8.) The standard of review used by a federal court when addressing the issue of sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tibbs v. Florida, 457 U.S. 31, 37 (1982). The credibility of witnesses, the resolution of conflicts of evidence, and the drawing of reasonable inferences from proven facts all fall within the exclusive province of the factfinder

and, therefore, are beyond the scope of federal habeas sufficiency review. Jackson, 443 U.S. at 319; Lowry v. Weneronicz, Civ. No. 11-165, 2014 WL 556191, at *15 (W.D. Pa. Feb. 13, 2014).

Pursuant to Pennsylvania law, in order to support a conviction for first-degree murder, it must be established that "a human being was unlawfully killed; that the defendant did the killing; and that the killing was done in an intentional, deliberate, and premeditated manner." Commonewalth v. Stokes, 78 A.3d 644, 650 (Pa. Super. 2013); see also 18 Pa.C.S.A. §§ 2501, 2502(a). Moreover, the "[s]pecific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another[,]" Stokes, 78 A.3d at 650, and "malice may also be inferred from the use of a deadly weapon on a vital portion of the victim's body." Commonwealth v. Chine, 40 A.3d 1239, 1242 (Pa. Super. Ct. 2012).

Based upon the above standard, the Court finds that there was sufficient evidence to support Price's first-degree murder conviction. Specifically, as noted by the Superior Court in the direct appeal, there was no dispute with regard to the first two elements: 1) that the "Commonwealth presented evidence to show that Ms. Price was killed[,]" and 2) that "Price was the individual who killed her." Price, 2014 WL 10919337, at *8. As to the specific intent to kill Ms. Price, the Superior Court provided that "Price stabbed Ms. Price 27 times" and that "[o]f the 27 stab wounds, eight were made to the head and neck area and five were made to the chest region." Id. The Superior Court also noted that Ms. Price was shot in her face from close range. Id. Finally, the Superior Court concluded that the jury found sufficient evidence to support a conviction of murder in the first degree, rejecting Price's contention that he acted out of a sudden and intense passion, which would have supported a verdict for voluntary manslaughter. Id.

This Court concludes that the state court's conclusion was a reasonable determination of the facts in light of the evidence presented, and was neither contrary to, nor an unreasonable

14

application of, clearly established federal law. See Fann, 2016 WL 1624013, at *5; Falino v. Harlow, Civ. No. 11-1582, 2014 WL 7359098, at *12 (W.D. Pa. Dec. 24, 2014); Lowry, 2014 WL 556191, at *15. Consequently, the Court concludes that the this ground of Price's petition does not warrant habeas relief.

### C. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). Accordingly, reasonable jurists could not disagree with the resolution of this petition, there is no basis for the issuance of a COA. Thus, the Court will decline to issue a COA, as Price has failed to demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Slack v. McDaniel, 529 U.S. 473, 484 (2000).

### IV. CONCLUSION

For the foregoing reasons, Price's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1), will be dismissed, and a COA will not issue. An appropriate Order follows.